Charles H. Albers, as Receiver for the Cody Trust Company, Appellant, v. Indemnity Insurance Company of North America, Appellee.

Gen. No. 38,451.

Opinion filed December 31, 1935.

GEORGE A. NOVAK, of Chicago, for appellant; DONALD P. VAIL and LOUIS H. KOHN, JR., both of Chicago, of counsel.

DENT, WEICHELT & HAMPTON, of Chicago, for appellee; LOUIS L. DENT, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Charles H. Albers as receiver of the Cody Trust Company, an Illinois corporation, brought suit against the Indemnity Insurance Company of North America, a corporation, Cody Trust Company, a corporation, and Illinois Management Corporation, a corporation, on two fidelity insurance bonds for $25,000 each; each bond provided for the payment of loss to the Cody

Trust Company caused by the dishonesty of its employees. The insurance company, hereafter called the defendant, filed its motion to dismiss on the ground that the complaint did not state a cause of action; the motion was sustained, the suit dismissed, and plaintiff appeals.

The material allegations of the amended complaint so far as it is necessary to state them here, are that the Cody Trust Company was duly qualified under the statute of this State to conduct a trust business and was engaged in the real estate mortgage and trust business. In the regular course of business as a trust company it received from its customers at different times deposits of money to pay taxes on real estate, interest on mortgages, and other trust matters, and it is alleged that between May 1, 1932, and December 12, 1933, while the two fidelity bonds in question were in force, trust moneys aggregating more than $155,000 were misappropriated for its own general corporate purposes through the wrongful acts of its employees; that when it received trust funds some of them were deposited in trust accounts in banks in Chicago and some were deposited to the credit of the Cody Trust Company in its own bank account, and that a part of these moneys, aggregating $155,000, was used by the Cody Trust Company to defray expenses in the conduct of its own business. It is further alleged that the Cody Trust Company became financially embarrassed and a suit was brought by the auditor of public accounts of the State of Illinois against it, in which suit plaintiff was appointed receiver. The prayer was for an accounting and for a decree for the amount so wrongfully used but not in excess of $50,000, the face of the two bonds.

The question for decision turns upon the construction of the two fidelity bonds, which are designated "Brokers' Blanket Bond. Standard Form . . . For

Private Bankers and Stock Brokers,'' the pertinent portions of which are as follows:

"Indemnity Insurance Company of North America, a corporation of the State of Pennsylvania, . . . in consideration of an annual premium agrees to indemnify Cody Trust Company and/or Cody and Company, A. T. I. M. A. hereinafter called the Insured, against the direct loss, sustained while this bond is in force and discovered as hereinafter provided, of any money or securities, or both, as defined in Section 5 hereof, in which the Insured has a pecuniary interest, or held by the Insured as collateral, or as bailee, trustee or agent, and whether or not the Insured is liable therefor (such money and securities being hereinafter called Property), in an amount not exceeding Twenty Five Thousand Dollars as follows:

"(A) Through any dishonest act, wherever committed, of any of the Employes, as defined in Section 6 hereof, whether acting alone or in collusion with others.

"Section 6. The word 'Employes' as used herein shall be deemed to mean the officers, clerks and other persons in the immediate employ of the Insured during the currency of this bond . . .

"Section 7. This bond does not cover . . . (d) Any loss resulting directly or indirectly from the act or acts of any director of the Insured, other than one employed as a salaried official. . . .''

There is no allegation in the amended complaint that any of the $155,000 was used by anyone except the Cody Trust Company itself, nor is there any allegation that any of such money was used for any purpose other than the corporate purpose of the Cody Trust Company. From the provisions of the bond, above quoted, the defendant insurance company agrees to indemnify the Cody Trust Company against loss sustained by it, and from the allegations of the amended

complaint it appears that the Cody Trust Company did not sustain any loss, but on the contrary appropriated $155,000 of its customers' money to its own use. The bond was not for the benefit of persons dealing with the Cody Trust Company.

In *National Surety Co. v. Fletcher Savings & Trust Co.*, 201 Ind. 631, suit was brought on two fidelity bonds, against the surety company, by receivers of the German Investment and Securities Company seeking to recover a loss claimed to have been sustained through the dishonesty of one of its employees who was its treasurer and manager. In that case the insured, engaged in the real estate loan business, was trustee in trust deeds given to secure mortgage bonds. Moneys were paid to the insured by its customers which, through the dishonesty of the insured's treasurer, were used for the current expenses of the insured. The complaint, in several paragraphs, alleged claimed breaches of the bonds. In paragraph ''E'' of the complaint it was alleged that the insured company, ''as trustee, took mortgages on real estate to itself securing notes and bonds issued thereunder''; that the insured company sold its bonds to its customers; that some of the bonds contained a provision giving the mortgagors the right to pay the whole or any part of the principal before maturity; that in a number of instances the mortgagors exercised such right of prepayment and paid to the insured company moneys on account of the principal of the mortgage bonds; that with knowledge of these facts an employee of the insured dishonestly used such trust funds for the use of the insured. A demurrer was interposed to this paragraph of the complaint, which the court overruled. An appeal was taken to the Appellate Court of Indiana where the judgment of the trial court, in this respect, was affirmed (154 N. E. 672). The Appellate Court there said (p. 675): that more than $7,000 was paid to the

company as trustee as charged under paragraph "E" of the complaint; that the employee, "with full knowledge of the circumstances under which such money was paid to the company, with knowledge that the money so paid as alleged in 'E' . . . was held by the company as trust funds, and with full knowledge that the company was hopelessly insolvent, dishonestly and wrongfully appropriated such trust funds to the use of the company, and commingled them with the funds of the company, and then unlawfully and wrongfully used such trust funds in the business of the company, so that, when the holders of the bonds . . . presented such bonds for payment the company had no money with which to pay them." A further appeal was taken to the Supreme Court of Indiana where the judgments of the trial court and of the Appellate Court, by which the demurrer to paragraph "E" was overruled, were reversed with directions to sustain the demurrer to that paragraph. (201 Ind. 631.) The court there said (p. 642): "Certain conclusions as to loss are pleaded in the specifications of the alleged breaches of the bond. But it appears from the facts therein stated that the German Investment and Securities Company [the insured] did not suffer any loss from the fraud, dishonesty, forgery, theft, or wrongful abstraction of Seidensticker as to alleged breaches B, D, E, F and G. The bond was not for the benefit of any other corporation or person. The demurrer as to these alleged breaches of the bond should have been sustained." To the same effect is *Corn Belt Bank v. Maryland Casualty Co.*, 281 Ill. App. 387.

Counsel for plaintiff, in support of his contention that "the Cody Trust Co. in its trust capacity and as representative of the trust beneficiary sustained a loss within the meaning of the bond sued upon," cites *Fitchburg Sav. Bank v. Massachusetts Bond. & Ins. Co.*, 274

Mass. 135; *Maryland Casualty Co. v. American Trust Co.,* 71 F. (2d) 137, and other cases.

In the *Fitchburg Savings Bank* case suit was brought "on a bankers' blanket bond" of indemnity which indemnified it against loss "due to any dishonesty or criminal act on the part of any of the officers or employees of the insured." While the bond was in force the insured's treasurer diverted the bank funds for his own benefit and it was held that the bond would cover such loss. In that case the insured's money was used by one of the officers for his own benefit, while in the instant case the insured Cody Trust Co. used the moneys of its customers to pay its own obligations. It is obvious that the cases are entirely dissimilar. So, too, in the *American Trust Co.* case, which was a suit brought on a fidelity insurance bond by the insured bank. It there appeared that the president of the bank had secretly procured loans from the bank through straw men so that he and other parties might speculate in securities, and the money was so used that there was a breach of the bond in that the bank had sustained a "direct loss." The distinction between that case and the case at bar is obvious.

Before entering judgment of affirmance we must again call attention to the use of the confusing symbol "and/or." Since we felt obliged to quote part of the bond where this monstrosity appears, we once more condemn its use lest by passing it over we seem to approve. Of course counsel are not responsible for the dereliction of those who drew the bond. This court has in many cases condemned in unmeasured terms this "accuracy destroying symbol." Some of these are *Preble v. Architectural, etc. Union,* 260 Ill. App. 435; *Tarjan v. National Surety Corp.,* 268 Ill. App. 232; *City Nat. Bank & Trust Co. v. Davis Hotel Corp.,* 280 Ill. App. 247. See also *Ex parte Iratacable,* 55 Nev. 263, 30 P. (2d) 284; *State v. Beacon Pub. Co.,* 141

Kan. 734, 42 P. (2d) 960; *Bell v. Wayne United Gas Co.*, — W. Va. —, 181 S. E. 609; *Irving Trust Co. v. Rose*, 67 F. (2d) 89; *Commercial Standard Ins. Co. v. Davis*, 68 F. (2d) 108; *Employers' Mut. Liability Ins. Co. v. Tollefson*, — Wis. —, 263 N. W. 376. In the case last cited the coverage clause insured the defendants "C. D. Brower, Jr. and/or the Sturgeon Bay Company," as the "named assured." The court said (p. 377):

"It is manifest that we are confronted with the task of first construing 'and/or,' that befuddling, nameless thing, that Janus-faced verbal monstrosity, neither word nor phrase, the child of a brain of some one too lazy or too dull to express his precise meaning, or too dull to know what he did mean, now commonly used by lawyers in drafting legal documents, through carelessness or ignorance or as a cunning device to conceal rather than express meaning with view to furthering the interest of their clients. We have even observed the 'thing' in statutes, in the opinions of courts, and in statements in briefs of counsel, some learned and some not. . . . This gives to 'and/or' all its implications. It renders somewhat inexact our reference to the 'verbal monstrosity' as 'Janus-faced,' for it imputes to it more than two faces, but the appellation may stand for want of one better fitting."

The judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.